UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MTR CAPITAL, LLC,** <br><br> Plaintiff, <br><br> vs. <br><br> **LAVIDA MASSAGE FRANCHISE DEVELOPMENT, INC., ET AL.,** <br><br> Defendants. | 2:17-CV-13552-TGB-EAS <br><br> **ORDER DENYING MOTIONS FOR RECONSIDERATION AND DENYING MOTION FOR ATTORNEY FEES** |

The Court issued its order and judgment in this case on November 6, 2020. ECF Nos. 87, 88. Subsequently, both Plaintiff (ECF No. 93) and Defendants (ECF No. 90) filed timely motions to alter or amend the judgment, and Plaintiff also filed a timely Motion for Attorney Fees and Costs (ECF No. 89). Because they do not raise any issues that meet the high standard for obtaining a new or modified judgment, both Plaintiff and Defendants' motions are **DENIED.** Additionally, Plaintiff's Motion for Attorney Fees[1] is **DENIED.**

---

[1] In addition to the Motion for Attorney Fees, Plaintiff filed a Bill of Costs under Fed. R. Civ. P. 54(d)(1). ECF No. 92. Because the clerk has not yet taxed these costs, Defendants' "Objection" (ECF No. 97) is premature and will be stricken.

1

## I. BACKGROUND

Plaintiff MTR Capital ("MTR") invested in a franchise opportunity with Defendant LaVida Massage Franchise Development, Inc. ("LaVida"). After the venture failed, MTR brought this lawsuit claiming that Defendants induced MTR to invest in a LaVida franchise by making false statements and fraudulent omissions. The Court held a bench trial over four days between January 27-31, 2020, and subsequently issued its findings of fact and conclusions of law awarding $39,000 in damages to MTR. ECF No. 87. Plaintiff prevailed on one claim: the Court found that in failing to provide Plaintiff with an updated Franchise Disclosure Document ("FDD") that accurately reflected a number of recent franchise closures, Defendants committed a deceptive or unfair trade practice in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). *Id.* at PageID.2062. The Court also found Plaintiff sufficiently alleged a causal relationship between this violation and at least some of its financial losses, resulting in a damage award equal to the franchise fee Plaintiff originally paid. *Id.* at PageID.2065-66.

Both Parties bring their motions under Fed. R. Civ. P. 59(e), which allows a Court to alter or amend its judgment, and Fed. R. Civ. P. 60(b), which lists various grounds for relief from judgment. Normally responses to these motions are not allowed under LR 59.1, but the Court granted extended briefing. ECF No. 96. These motions are fully briefed and properly before the Court.

## II.   STANDARD OF REVIEW

The Court "may grant a Rule 59(e) motion to alter or amend judgment only if there is: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 496 (6th Cir. 2006) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). This standard is consistent with the "palpable defect" standard found in this District's Local Rules. *Id.* Under Local Rule 7.1, the Court generally

> will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the Court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. LR 7.1(h)(3). Rule 59(e) motions "cannot be used to present new arguments that could have been raised prior to judgment." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008). Similarly, Rule 59(e) is not a procedural vehicle for parties to relitigate previously considered issues. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). District courts have a great deal of discretion in deciding whether to grant a Rule 59 motion. *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010).

Rule 60(b) provides another mechanism for parties to seek relief from a final judgment, "under a limited set of circumstances including fraud, mistake, and newly discovered evidence." *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). Because the rule undermines finality, relief pursuant to Rule 60(b) is an "extraordinary remedy that is granted only in exceptional circumstances." *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 502-03 (6th Cir.2000). The party that seeks to invoke Rule 60(b) bears the burden of establishing that its prerequisites are satisfied. *Jinks v. Alliedsignal*, Inc., 250 F.3d 381, 385 (6th Cir. 2001). A Rule 60(b) motion is properly denied where the movant attempts to use the motion to relitigate the merits of a claim and the allegations are unsubstantiated. *Miles v. Straub*, 90 Fed. App'x 456, 458 (6th Cir. 2004). A movant under Rule 60(b) likewise fails to show entitlement to relief by simply rephrasing the allegations in the original complaint. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 543 (6th Cir. 2004).

### III. ANALYSIS

#### A. Plaintiff's Motion

Plaintiff's motion argues that (1) Defendants violated the Florida Franchise Act ("FFA"), (2) certain statements Defendants made constituted deceptive acts and practices in violation of the FFA and the FDUTPA, (3) the individual Defendants should be held liable for any

4

damages,[2] and (4) the Court incorrectly assessed the damages owed to Plaintiff. ECF No. 93, PageID.2168-73.

But these are all previously considered issues, and Plaintiff acknowledges as much with citations to the Court's Order. *See, e.g., id.* at PageID.2169-70. The Court carefully considered the FFA (ECF No. 87, PageID.2066-68) and the FDUTPA (*id.* at PageID.2055-62), and outlined in detail its rationale for the amount of damages awarded to Plaintiff (*id.* at PageID.2063-66). Plaintiff simply disagrees with the Court's interpretation of statutes or evidence, indicating that the Court "does not analyze" some issue Plaintiff believes it should have. *Id.* at PageID.2170. But without indicating with more specificity why any of these choices in assessing the facts and the law were patently incorrect (i.e., with citations to controlling caselaw demonstrating the correct approach), Plaintiff has not shown that the Court committed the kind of "clear error" Rule 59(e) is meant to correct. Neither do any of the Plaintiff's arguments raise newly discovered evidence, intervening changes in the law, or issues of "manifest injustice." The Court does not find grounds to alter or amend the judgment under Rule 59(e).

Similarly, Plaintiff does not raise any claims of "fraud, mistake, or newly discovered evidence" that might merit relief under Rule 60(b). It

---

[2] The Court's judgment was in fact entered against both the corporate entities and the individuals, so it is unclear what Plaintiff seeks reconsideration of as to this point. ECF No. 88.

merely seeks to "relitigate the merits" of its claims, and therefore the Motion will be denied.

## B. Defendants' Motion

Defendants' motion focuses only on the Court's award of damages.

### i. Basis for a damages award

Defendants' first argument is that the Court incorrectly interpreted the relevant caselaw in finding that Defendants are liable to MTR under the FDUTPA in the amount of the initial franchise fee. ECF No. 90, PageID.2113-18. Defendants cite *Rollins, Inc.*'s description of the two ways that damages under the FDUTPA can be calculated:

> The standard for determining the actual damages recoverable under FDUTPA is: "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. [. . .] A notable exception to the rule may exist when the product is rendered valueless as a result of the defect—then the purchase price is the appropriate measure of actual damages."
> *Rollins, Inc. v. Heller*, 454 So.2d 580, 585 (Fla. 3d DCA 1984).

ECF No. 90, PageID.2114. Defendants then conclude that the Court's award of $39,000, the amount Plaintiffs initially paid as a franchise fee, is "*Rollins*, Part Two: the purchase price." *Id.* Because the chain of causation does not indicate that "the product"—here, the franchise—"was rendered valueless" as a result of Defendants' conduct, they argue the Court erred in awarding damages because the requirements of the FDUTPA as interpreted by caselaw were not met. *Id.* at PageID.2115-17.

6

But the Court explicitly stated it was using the first, not the second, measure of damages, precisely *because* it recognized that the franchise was not rendered totally valueless by Defendants' FDUTPA violation. Admittedly, "difference in the market value" is an awkward formulation to apply to a franchise, and the Court acknowledged this in its original order. ECF No. 87, PageID.2065. But the damage award essentially conceptualizes the condition in which the franchise "should have been delivered" as including a full disclosure of risk as mandated by Florida law. Looking at the timeline of events, and indeed considering causation issues as Defendants urge, the Court identified the point in time when there was an unbroken chain of causation leading to a gap between the franchise's market value and what was delivered: when Plaintiff initially signed the franchise agreement. The Court would have included "any financial expenditures prior to the signing of the Franchise Agreement" in the damages calculation. *Id.* It just so happens the only expenditure alleged by Plaintiff up until this time was the franchise fee itself.

Defendants do not specifically provide caselaw or other support for their implied contention that the Court erred in using the first measure of damages. The rest of their argument addresses why it would be incorrect to award damages under the second formulation, but the Court never applied that method to determine the damages. This argument therefore fails to identify any "clear error" in determining the amount of damages.

### ii. Basis for an FDUTPA claim

Defendants next argue that the Court misinterpreted the *Cluck-U Chicken* case when it determined that their conduct was the basis for an FDUTPA violation. The Court's original citation of this case is as follows:

> Information on the number of franchise units open and closed at any given time is a material fact about the franchise opportunity. *See, e.g., Cluck-U Chicken, Inc. v. Cluck-U Corp.*, 358 F. Supp. 3d 1295, 1313 (M.D. Fla. 2017) (finding an actionable FDUTPA claim when franchisor failed to provide franchisee with updated disclosure document showing closures from that year).

Findings of Fact and Conclusions of Law, ECF No. 87, PageID.2062.

Defendants point out that in *Cluck-U Chicken*, the court denied summary judgment for the plaintiffs on an FDUTPA claim. Although the defendants in that case failed to update their franchise disclosure document, just as Defendants here, the court found that issues of material fact remained as to the claim because the plaintiffs in turn "fail[ed] to offer evidence that Defendants' alleged violations of the Franchise Rule would have misled a consumer acting reasonably in the same circumstances." ECF No. 90, PageID.2199 (quoting *Cluck-U Chicken*, 358 F. Supp. 3d at 1313). Defendants argue that MTR similarly did not provide any such evidence in this case, and therefore the Court erroneously cited this case to support a finding of a violation. *Id.*

Defendants are incorrect. First, the Court cited *Cluck-U* only for the proposition that failure to update a franchise disclosure document is an

8

example of conduct that *can* be the source of an actionable FDUTPA claim. Second, unlike the situation before the court in *Cluck-U*, here the Court *did* consider evidence presented by Plaintiff that the nature of misrepresentation made by Defendants would have misled a reasonable consumer. ECF No. 87, PageID.2060-62 ("When questioned by the Court, even Ms. Davis confirmed that whether franchise closures had occurred is something that 'a reasonable person would probably want to know' before buying a franchise."). Defendants have failed to show any "clear error" in the Court's application of this case.

### iii. Liability of the individual Defendants

Lastly, Defendants state that the Court erred in entering a judgment against "Defendants" as a group, because only the corporate Defendant LaVida received the franchise fee. They also argue that MTR did not put forward sufficient evidence to establish liability against the individual Defendants (Duane Goodwin and Peggy Davis), citing caselaw indicating that "in order to proceed against an individual using a FDUTPA violation theory an aggrieved party must allege that the individual was a direct participant in the improper dealings." *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1074 (Fla. Dist. Ct. App. 2008).

But it is incorrect to say that Plaintiff never alleged, or the evidence never showed, that the individual Defendants were "direct participants" in the conduct alleged. The Complaint charges that "Defendants have never provided the Plaintiff with a compliant FDD" (franchise disclosure

9

document) and does not distinguish between the individual and corporate Defendants. ¶ 21, ECF No. 1, PageID.6. The Court noted in its Findings of Fact the Defendants collectively failed to make certain disclosures in the FDD (ECF No. 87, PageID.2036), and that Duane Goodwin first sent the FDD to Plaintiff (*Id.* at PageID.2036). It was also established through testimony that Peggy Davis was responsible for preparing and updating the FDD. Test. of Peggy Davis, Tr. 1/28/20, ECF No. 73, PageID.1387.

Establishing "direct participation" does not require finding an intent to deceive: it is enough for the plaintiff to show "the defendant had or *should have had* knowledge or awareness of the misrepresentations." *KC Leisure*, 972 So. 2d at 1073 (emphasis added) (outlining the standard for holding an individual liable under the Federal Trade Commission Act and indicating that the standard for individual liability under the FDUTPA is similar). Defendants correctly state that the Court did not find the evidence "sufficient to show that LaVida intended to make such a false statement or intended for Plaintiff to rely on it." ECF No. 90, PageID.2121 (quoting ECF No. 87, PageID.2049). But the very nature of the violation establishes there were rules the individual Defendants *should have* had knowledge of regarding the requirements for keeping an FDD updated and providing potential franchisees with an up-to-date copy. ECF No. 87, PageID.2060-62. Because they did not do so, they can be held liable just as the corporate Defendant can. There is no "clear error" in holding all Defendants liable for the damage award.

Overall, none of Defendants' arguments indicate clear error, new evidence, changes in the law, or manifest injustice such that the Court's judgment should change. There is also no "fraud, mistake, or newly discovered evidence" that might merit relief under Rule 60(b). Therefore, the Defendants' motion is denied.

### C. Plaintiff's Motion for Attorney Fees

Lastly, the Court will consider Plaintiff's Motion for Attorney Fees under Fed. R. Civ. P. 54(d)(2) and Fla. Stat. § 501.2105. The statute provides that a trial judge "may award the prevailing party" reasonable costs and fees in an FDUTPA matter. Fla. Stat. § 501.2105; *see also* ECF No. 89, PageID.2082. Under Florida law, "the party prevailing on the significant issues in the litigation is the party that should be considered the prevailing party for attorney's fees." *Moritz v. Hoyt Enterprises, Inc.*, 604 So. 2d 807, 810 (Fla. 1992). Factors that courts consider in determining whether to award fees under the FDUTPA include:

> (1) the scope and history of the litigation;
> (2) the ability of the opposing party to satisfy an award of fees;
> (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances;
> (4) the merits of the respective positions—including the degree of the opposing party's culpability or bad faith;
> (5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless;
> (6) whether the defense raised a defense mainly to frustrate or stall;
> (7) whether the claim brought was to resolve a significant legal question under FDUTPA law.

*Humane Soc. of Broward Cty., Inc. v. Fla. Humane Soc.*, 951 So. 2d 966, 971-72 (Fla. Dist. Ct. App. 2007).

Initially, the Court is skeptical Plaintiff can reasonably be said to have prevailed on "significant issues in the litigation," given that the Court only found in its favor on one of eight issues (only three of which were FDUTPA-related). Indeed, the requested fee award is roughly ten times what Plaintiff's Counsel were able to recover for their client.

Even if the Court were to decide Plaintiff was a prevailing party, however, with one exception the *Humane Society* factors either do not apply or do not militate in favor of a fee award. Regarding factor (1), this was a contested and lengthy case, but not so much so as to make it out-of-the-ordinary and meriting a fee award. There is no conclusive evidence presented either way regarding factor (2)—Plaintiff says Defendants could pay, and Defendant says it would be difficult for them as a small business—making it neutral at best. Factor (3) weighs slightly in Plaintiff's favor, but the Court does not give it heavy consideration because Defendants' conduct here was not malicious—deterrence is not as much of a concern as it would be if their failures in disclosure were deliberately deceptive. There is no evidence under factor (4) that Defendant's overall legal position was "so clearly without merit"—this was a hard-fought case that went all the way to trial where both sides had tenable positions. ECF No. 89, PageID.2089. Factor (5) does not seem to apply, as there is no evidence of bad-faith claims made by either side.

There is also no compelling evidence that defenses were raised merely to "frustrate or stall" under factor (6)—Defendants engaged in mediation as was their right under their agreement with Plaintiff, and subsequently engaged in a vigorous, but not particularly unusual, motions practice. As to factor (7), the FDUTPA claim was a small portion of this case that did not resolve any "significant legal question." The Court in its discretion declines Plaintiff's request for attorney fees.

## CONCLUSION

Neither Plaintiff nor Defendants raise issues of clear error, new evidence, changes in law, or manifest injustice as required by Fed. R. Civ. P. 59(e), or fraud or mistake that would afford relief from judgment under Fed. R. Civ. P. 60(b). Therefore, Plaintiff's Motion to Alter or Amend Judgment (ECF No. 93) is **DENIED**, and Defendants' Motion (ECF No. 90) is similarly **DENIED**. Plaintiff's Motion for Attorney Fees (ECF No. 89) is **DENIED**. No new judgment will issue and the case remains closed.

**SO ORDERED** this 27th day of April, 2021.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge